| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Criminal Action No. 2019–0012** |
| | ) | |
| **RAKEM HENDRICKSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ──────────────────────────── | ) | |

**Attorneys:**
**Daniel H. Huston, Esq.**
St. Croix, U.S.V.I.
    *For the United States*

**Michael A. Rogers, Esq.**
St. Croix, U.S.V.I.
    *For Defendant*

<u>**MEMORANDUM OPINION**</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant Rakem Hendrickson's ("Defendant") "Motion to Suppress" (Dkt. No. 46); the Government's Opposition thereto ("Opposition") (Dkt. No. 50); Defendant's "Supplement in Support of His Motion to Suppress" ("Supplement") (Dkt. No. 78); the Government's Opposition to the Supplement ("Supplement Opposition") (Dkt. No. 80); the evidence and argument presented at the suppression hearing; and the supplemental briefing submitted by the parties following the suppression hearing (Dkt. Nos. 86, 87). For the reasons that follow, the Court will deny Defendant's Motion to Suppress.

## I.     BACKGROUND

On October 1, 2019, the Government filed an Indictment against Defendant charging him with possession of a firearm in a school zone, in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(1)(B) (Count 1); use of a firearm during a drug trafficking crime in violation of 18 U.S.C.

§ 924 (c)(1)(A) (Count 2); and possession of marijuana with intent to distribute near school in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 860(a) (Count 3). (Dkt. No. 68).[1]

On July 15, 2019, Defendant filed the instant Motion to Suppress. At the subsequent suppression hearing, the Government presented the testimony of Sergeant Gregory Charlery-Joseph ("Sgt. Charlery-Joseph") of the Virgin Islands Police Department ("VIPD"), VIPD Detective Aisha Jules ("Det. Jules"), and Homeland Security Investigations ("HSI") Special Agent Derek Coffey ("Special Agent Coffey"). The Government also submitted several exhibits. The following evidence emerged from the suppression hearing.[2]

Sgt. Charlery-Joseph testified that on the afternoon of February 16, 2018, he was patrolling in the Sion Farm area on St. Croix in an unmarked police vehicle with VIPD Detective Leon Cruz ("Det. Cruz") and VIPD Officer Maurice Goodwin ("Officer Goodwin"). (Hr'g. Tr. 5). Det. Cruz received a tip that an individual, identified by the name "Kimby,"[3] was operating a blue Jeep Wrangler with the license plate CGC-407 and selling drugs from the vehicle. *Id.* at 6. The tip came from a confidential informant who previously had provided reliable information to Det. Cruz. *Id.* at 7. The confidential informant said that the individual was known to carry a firearm. *Id.* at 6. The tipster further stated that the individual was wearing a white t-shirt and distributed drugs in the

---

[1] Prior to filing the Information, the Government commenced this action by filing a Criminal Complaint on December 4, 2018. (Dkt. No. 1). The Government also filed an Information on May 17, 2019. (Dkt. No. 23).

[2] The Court bases the background factual discussion in this section on the record established at the suppression hearing. The Court provides this information solely for the purposes of this pretrial motion, ever mindful that Defendant is presumed innocent until proven guilty. Most of the facts discussed herein are alleged, but at this stage not conceded or proven beyond a reasonable doubt to the factfinder.

[3] Sgt. Charlery-Joseph testified that "Kimby" was Defendant Rakem Hendrickson's nickname and that this was the same nickname used to identify an individual who allegedly shot into a residential community on February 12, 2018, four days before Defendant was apprehended. *Id.* at 51, 53-54.

"vicinity of … Paul's shop, Dynasty Convenience Store," in Sion Farm ("Dynasty Convenience"). *Id.* at 6-7. At the time, other law enforcement officers were patrolling in the area in marked cars. *Id.* at 21-22, 26.

Sgt. Charlery-Joseph testified that he arrived at Dynasty Convenience with Det. Cruz and Officer Goodwin at approximately 12:24 p.m. *Id.* at 25. At approximately 2:13 p.m., the officers observed a blue Jeep arrive on the scene and park facing west, along a wall to the east of the store. *Id.* at 7, 25. The officers drove their vehicle in the roadway to the side of the Jeep and parked. *Id.* at 7; *see also* Gov't Ex. 21 (showing the blue Jeep parked between a cinderblock wall and the unmarked police vehicle). According to Sgt. Charlery-Joseph, when Det. Cruz and Officer Goodwin exited the police vehicle, a man in a white T-shirt—subsequently identified as Defendant—exited the blue Jeep and locked the vehicle with a remote control. (Hr'g Tr. 10). Sgt. Charlery-Joseph testified that Det. Cruz asked Defendant whether he had anything illegal in the vehicle. *Id.* Defendant "indicated he did not" and walked away from the officers towards Dynasty Convenience. *Id.* at 11-12. According to Sgt. Charlery-Joseph, Det. Cruz looked into the car and observed "a plastic bag containing [small] vials that [are] normally used for distribution [of drugs]" in the rear door of the Jeep. *Id.* at 12, 42-43; *see also* Def. Ex. 11 (photograph of the back seat interior of the Jeep from the right side of the vehicle allegedly depicting a clear plastic bag with vials in the left rear door). Det. Cruz then notified the supervisor on duty, Sergeant Roland Huertas ("Sgt. Huertas"), of the contraband he had observed in the Jeep. (Hr'g Tr. 12).

Sgt. Huertas and members of the VIPD Criminal Investigation Bureau arrived at the scene in multiple police vehicles. *Id.* at 12-13, 37-38. Det. Jules testified that she saw a bag with vials used to distribute contraband in the rear door of the blue Jeep. *Id.* at 61-62. Detectives Cruz and Jules walked over to Dynasty Convenience and asked Defendant for consent to search his vehicle.

*Id.* at 62-63. Defendant denied the officers access to conduct a search of the Jeep, so they informed him that they were seizing the vehicle to tow it. *Id.* at 63. Det. Cruz then sought a telephonic warrant to search the Jeep from Superior Court Magistrate Judge Jessica Gallivan. *Id.*

> In order to obtain the warrant:
>
> Detective Cruz relayed to the magistrate that he had received information that Mr. Hendrickson was distributing illegal contraband from a vehicle, Charlie-Gulf-Charlie 407, and that he had a firearm. That the information that he had received was relayed to him by a reliable source, and that the source had [provided] information to him before that gave him an arrest in the past.
> There was also disclosed that the individual, Mr. Hendrickson, was involved in or possibly the individual who had fired shots in a prior altercation in, on February 12th, 2018, and that his name was the individual who had fired the shots.

*Id.* at 13-14. Sgt. Charlery-Joseph testified that he took notes for Det. Cruz while Det. Cruz was on the phone with Magistrate Judge Gallivan. *Id.* at 59. The warrant was granted at 3:10 p.m. by Magistrate Judge Gallivan. *Id.* at 14.[4] A forensics team took photographs and conducted the search. *Id.* The items recovered from the search include several containers of marijuana; vials;[5] a firearm with an extended magazine and ammunition; another magazine for a rifle; jewelry; and an insurance card. *Id.* at 16-17.

The February 16, 2018 incident and search resulted in a Superior Court case, which was pending when Defendant was taken into federal custody in April 2019. *Id.* at 91. Special Agent Coffey testified that on April 16, 2019, he executed a federal arrest warrant on Defendant outside the Superior Court building. *Id.* at 76. The arrest warrant arose from the same facts and

---

[4] The telephonic warrant was dated February 26, 2018, *nunc pro tunc* to February 16, 2018. Gov't Ex. 13. The Government submitted Det. Cruz's affidavit to the Superior Court in support of the telephonic warrant as Government Exhibit 14.

[5] Sgt. Charlery-Joseph testified that such vials are typically used in the distribution of illegal substances such as cocaine and marijuana. *Id.* at 17. Det. Jules identified the vials as "artisan vials" and stated that they are used for distribution of illegal substances. *Id.* at 62.

circumstances as Defendant's Superior Court case. *Id.* at 91-92.[6] At the time, Special Agent Coffey

assumed that Defendant was represented by counsel in the Superior Court case. *Id.* He and other

officers took Defendant into custody and transported him to the High Intensity Drug Trafficking

Task Force ("HIDTA") office. *Id.* at 77.

Special Agent Coffey and Special Agent Chris McGrath brought Defendant to the HIDTA

interview room for the purposes of conducting an interview. *Id.*[7] Special Agent Coffey advised

Defendant of his rights by reading a *Miranda* rights and waiver form. *Id.* at 78. The "Statement of

Rights" on the form reads as follows:

> Before we ask you any questions, it is my duty to advise you of your rights:
> You have the right to remain silent.
> Anything you say can be used against you in a court of law or other proceedings.
> You have the right to consult an attorney before making any statement or answering any questions.
> You have the right to have an attorney present with you during questioning.
> If you cannot afford an attorney, one will be appointed for you before any questioning, if you wish.
> If you decide to answer questions now, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting an attorney.

Gov't Ex. 11. The waiver portion of the form states:

> I have had the above statement of my rights read and explained to me and I fully understand these rights. I waive them freely and voluntarily, without threat or intimidation and without any promise of reward or immunity. I was taken into custody at 2:00 pm (time), on 4/16/19 (date), and have signed this document at 3:15 pm (time), on 4/16/19 (date).

*Id.* (the time and date fields are handwritten). Special Agent Coffey testified that he asked

Defendant if he could read and write in English and he responded that he could and then Special

---

[6] The Government stipulates to this fact. *Id.* at 92.

[7] Special Agent Coffey described the interview room as a conference room with windows facing a parking lot, and a large table with seven to ten chairs. *Id.* at 77.

Agent Coffey read Defendant the Statement of Rights from the form. Hr'g Tr. 79; *see also* Gov't Ex. 31, 15:20:50-22:55. Special Agent Coffey testified that he "reviewed in summary the [waiver] section at the bottom [of the form]; asked Mr. Hendrickson if he would be willing to sign the form and speak with us. And he agreed to do that and signed the form…." Hr'g Tr. 80; *see also* Gov't Ex. 31, 15:22:55-24:22. Defendant's printed name and signature appear below the waiver of rights portion of the form. Gov't Ex. 11. The officers then conducted a recorded interview in an interview room for approximately an hour and a half, with breaks. *See* Hr'g Tr. 81-82, 85-87; *see also* Gov't Ex. 31. Towards the end of the interview, the agents asked Defendant for his consent to a search of his cellphone, but Defendant did not sign a consent form. (Hr'g Tr. 82-83). Special Agent Coffey testified that Defendant "was willing to allow [him] to look through the phone to scroll through it. He provided his thumbprint to open the phone up." Hr'g Tr. 83; *see* Gov't Ex. 12 (consent form showing Special Agent Coffey wrote "Refuse to sign – Verbal permission only").

In his memoranda and during the hearing, Defendant argued that there was no probable cause to seize and search the Jeep; thus, his Fourth Amendment rights were violated and the subsequently seized evidence should be suppressed. *See* Dkt. Nos. 46; 78; 86. Defendant contends that the confidential informant's tip was insufficient to provide reasonable suspicion for an investigatory stop or probable cause to obtain a warrant to search the Jeep. (Dkt. Nos. 46 at 7, 11; 86 at 2). Defendant also argues that the telephonic warrant was improperly obtained because the Government has not provided evidence that the warrant complies with the requirements of Virgin Islands Criminal Procedure Rule 4.1. (Dkt. Nos. 78 at 3; 86 at 3-5).

Defendant also asserts that any statements were obtained in such a way as to violate his Sixth Amendment rights. (Dkt. No. 86 at 6). He contends that the HSI agents who arrested and interrogated him at the HIDTA office knew or should have known that he had counsel in his

Superior Court case, because the federal charges arose from the same facts and circumstances as the local charges. (Dkt. No. 46 at 12-13). Defendant further states that his Fifth Amendment rights were violated because the waiver of his rights was neither knowing nor voluntary. Accordingly, Defendant argues that his recorded statement should be suppressed. *Id.* at 12.

The Government counters that there was sufficient probable cause to seize and search the blue Jeep. (Dkt. No. 50 at 5-6). Given the existence of probable cause, the Government argues that the automobile exception to the warrant requirement rendered it unnecessary to obtain a warrant to search the Jeep. (Dkt. No. 87 at 3). The Government further asserts that the telephonic warrant was properly obtained, as indicated by the warrant and affidavit entered into evidence. *Id.* at 4. In the alternative, the Government argues that the good faith exception would apply to the search. *Id.* at 6.

Further, the Government argues that all statements offered by Defendant were obtained without violating Defendant's rights. The Government contends that Defendant knowingly and voluntarily waived his Sixth Amendment right to counsel by signing a waiver and answering the questions posed in the custodial interrogation by HSI agents. (Dkt. No. 50 at 8-9). According to the Government, Defendant's representation by counsel in the then-pending Superior Court case is irrelevant to this case because Defendant was properly issued his *Miranda* rights by the HSI agent, signed a consent form acknowledging and waiving those rights, and there was no coercion used against Defendant. *See id.*; Dkt. No. 87 at 7-8.

## II.    DISCUSSION

**A.  Applicable Legal Principles**

**1.  Probable Cause**

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment further "provides that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *United States v. Franz*, 772 F.3d 134, 145 (3d Cir. 2014) (quoting U.S. Const. amend. IV). "The requirements for a warrant to be properly issued under federal law are that it must have been issued by a neutral and detached magistrate, and it must have been based on probable cause." *United States v. Katzin*, 94 F. App'x 134, 138 (3d Cir. 2004). To conclude that an application for a search warrant is supported by probable cause, "[a] magistrate must determine that there is a 'fair probability that ... evidence of a crime will be found in a particular place.'" *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *see also United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001). The determinative question is whether "a 'practical, commonsense decision [was made] whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime [would] be found in a particular place.'" *Zimmerman*, 277 F.3d at 432 (quoting *Gates*, 462 U.S. at 238). The warrant itself must "describe the things to be seized with sufficient particularity and be 'no broader than the probable cause on which it is based.'" *Id*. (quotations omitted). Where a magistrate judge's probable cause determination is challenged, a district court must "determine whether the magistrate who issued the warrant had a 'substantial basis' for determining that probable cause existed," paying "great

deference" to the magistrate judge's decision. *Id.* at 432 (quoting *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993)).

"A magistrate may issue a warrant relying primarily or in part upon the statements of a confidential informant, so long as the totality of the circumstances gives rise to probable cause." *United States v. Stearn*, 597 F.3d 540, 555 (3d Cir. 2010). Where police investigation corroborates the confidential informant's information, this provides a substantial basis for probable cause. *Id.* at 556. Where police observe "seemingly innocent activity," the corroboration is sufficient for that activity to "became suspicious in light of the initial tip." *Id.* (quoting *Gates*, 462 U.S. at 243 n.13). "The issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (citations omitted).

While the Fourth Amendment generally requires police to obtain a warrant prior to a search, it is well established that the ready mobility of a vehicle permits law enforcement to search an automobile based only on probable cause. *United States v. Burton*, 288 F.3d 91, 100 (3d Cir. 2002) (citation omitted). Further, "[w]hile a seizure or search of property without a warrant ordinarily requires a showing of both probable cause and exigent circumstances, the 'ready mobility' of automobiles permits their search based only on probable cause." *Id.* (citations omitted). Thus, law enforcement may "seize and search an automobile without a warrant if probable cause exists to believe it contains contraband." *Id.* (citation omitted); *see also United States v. Donahue*, 764 F.3d 293, 295 (3d Cir. 2014) ("The Supreme Court has interpreted—and reinterpreted—the automobile exception so expansively that the Court essentially has obviated the

requirement that the government obtain a warrant to search a vehicle provided it has probable cause to believe that the vehicle contains evidence of a crime."). Because there is no exigency requirement, "probable cause does not dissipate after the automobile is immobilized." *Donahue*, 764 F.3d. at 300. Accordingly, a vehicle can be searched without a warrant once probable cause exists "even though [the government] has secured the vehicle against the loss of evidence and it has the opportunity to obtain a warrant for the search." *Id.* The same "'commonsense,' 'practical,' and 'nontechnical'" inquiry, "based on the totality of the circumstances and [] judged by the standard of 'reasonable and prudent men,'" as in the magistrate judge context, applies to the analysis of probable cause here. *Id.* at 301 (quoting *Gates*, 462 U.S. at 230-31); *see also Donahue*, 764 F.3d at 301 ("We evaluate the events which occurred leading up to the search, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.") (citations and quotations omitted).

### 2. *Miranda* Waiver

The Supreme Court *in Miranda v. Arizona* held that the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). *Miranda* warnings are required whenever a suspect has been (1) "taken into custody" and (2) subject to "interrogation" by the government. *See Steigler v. Anderson*, 496 F.2d 793, 798 (3d Cir. 1974); *United States v. Dupree*, 617 F.3d 724, 731 n.7 (3d Cir. 2010) (plurality opinion). Prior to any questioning, a suspect in custody must be advised as follows:

> that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda*, 384 U.S. at 479.

A suspect may waive those rights "provided the waiver is made voluntarily, knowingly and intelligently." *Id.* at 444; *see also United States v. Pruden*, 398 F.3d 241, 246 (3d Cir. 2005). The government bears the burden of proving by a preponderance of the evidence that the suspect was properly advised of his *Miranda* rights and the suspect voluntarily, knowingly, and intelligently waived his rights. *See Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986); *United States v. Jacobs*, 431 F.3d 99, 108-09 (3d Cir. 2005). To prove a valid waiver, the Government has the burden of establishing that the waiver was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Pruden*, 398 F.3d at 246 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)) (quotations omitted).

### 3. Sixth Amendment Right to Counsel

The Sixth Amendment prohibits the government from eliciting incriminating statements from an accused "after he has been indicted and in the absence of counsel." *Massiah v. United States*, 377 U.S. 201, 206 (1964). This right to counsel attaches upon the "initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972). However, the Sixth Amendment right to counsel is "offense specific" and "cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced . . . ." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). Thus, "incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those

offenses." *Maine v. Moulton*, 474 U.S. 159, 180 n.16 (1985); *accord Alston v. Redman*, 34 F.3d 1237, 1252 n.16 (3d Cir. 1994), *cert. denied*, 513 U.S. 1160 (1995).

The right to counsel may be waived by knowing and voluntary waiver, "whether or not [the individual] is already represented by counsel." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). If a suspect who is represented by counsel in another matter is properly informed of his *Miranda* rights and subsequently waives those rights, a court may find that the waiver was voluntary, knowing, and intelligent. *United States v. Green*, 516 F. App'x 113, 127 n.10 (3d Cir. 2013) (citing *Montejo*, 556 U.S. at 786 and *United States v. Whiteford*, 676 F.3d 348, 362 (3d Cir. 2012)). There is no presumption that a knowing and voluntary waiver of the right to counsel by a defendant is invalid simply because the defendant is represented by counsel. *Montejo*, 556 U.S. at 797.

### B. Analysis

#### 1. Search of the Jeep

The Court analyzes whether there was probable cause to search the blue Jeep based upon the confidential informant's tip that Defendant was selling drugs from the Jeep, together with the subsequent investigation by VIPD officers. The Court finds in the affirmative.

#### a. Probable Cause Determination

There is probable cause to search a vehicle if there is "a fair probability that contraband or evidence of a crime" will be found in the vehicle. *Zimmerman*, 277 F.3d at 432 (quoting *Gates*, 462 U.S. at 238). In determining whether the totality of the circumstances supports a finding of probable cause, the Court may rely on statements of a confidential informant. *See Stearn*, 597 F.3d at 555. Where police investigation corroborates the confidential informant's tip, this provides a substantial basis for probable cause. *Id.* at 556.

The facts in *United States v. Thompson*, are analogous to the circumstances here. 545 F. App'x 167 (3d Cir. 2013). There, an informant who had proved reliable on previous occasions reported to a police officer that an individual would be illegally selling an AK-47 rifle. *Id.* at 168. The informant relayed that he would be driving "in a blue Ford Econoline van" along a specific route. *Id.* The informant also gave the individual's name and race, as well as the location of the gun. *Id.* The police observed the vehicle along the specified route, stopped the vehicle, and conducted a search. *Id.* The Third Circuit panel held that the informant's tip, as corroborated by the police, was sufficient to establish probable cause to stop and search the vehicle. *Id.* at 170.

Here, the confidential informant's tip had sufficient reliability, as corroborated by the police investigation, to establish probable cause to search the blue Jeep. The confidential informant had provided Det. Cruz with reliable information in the past. (Hr'g Tr. 7). According to the confidential informant: (1) an individual identified as "Kimby" sold drugs from a vehicle; (2) the vehicle was a blue Jeep Wrangler; (3) the license plate of the Jeep was CGC-407; (4) the individual sold drugs in the vicinity of Paul's Shop, Dynasty Convenience in Sion Farm; and (5) the individual was wearing a white T-shirt and was known to carry a firearm. *Id.* at 6. Det. Cruz and his partners set up surveillance at Dynasty Convenience and observed a blue Jeep with the license plate CGC-407 arrive and park near the store. *Id.* at 7. Defendant, wearing a white T-shirt, exited the vehicle, locked it, and walked to the store. *See id.* at 9-10, 28. Det. Cruz, Sgt. Charlery-Joseph, and Det Jules saw through the window of the vehicle that there were artisan vials in a bag in the left rear door of the Jeep. *Id.* at 12, 62. Sgt. Charlery-Joseph and Det Jules, who testified, stated that those vials are often used to distribute contraband such as cocaine and marijuana. *Id.* at 17, 62. In addition to the confidential informant having provided reliable information in the past, the corroboration of the tip in the instant case provides support for the conclusion that there was "a

fair probability" that contraband would be found in the Jeep. *See, e.g.*, *Stearn*, 597 F.3d at 555. Thus, the law enforcement officers had probable cause to search the Jeep.

Further, the law enforcement officers did not simply rely on the tip of a reliable informant—they also conducted an independent investigation prior to the search of the Jeep. This police investigation revealed a sighting of drug paraphernalia in the vehicle. (Hr'g Tr. 12, 62). Although Defendant argued at the hearing that the artisan vials are not sufficient to support probable cause, *id.* at 138, the Court—considering the issue from "the standpoint of an objectively reasonable police officer," under the totality of the circumstances—disagrees. *See Donahue*, 764 F.3d. at 301 (quotations and citations omitted). The testimony at the hearing shows that at least two officers observed the vials and recognized them as paraphernalia often used for drug distribution. (Hr'g Tr. 12, 62). Moreover, these vials must be viewed through the prism of a tip from a reliable source who had identified Defendant, together with the blue Jeep Wrangler and Dynasty Convenience, as an individual who drove this particular vehicle and sold drugs at this particular location. Accordingly, the Court concludes, based on the evidence presented, that an objectively reasonable officer could conclude that the artisan vials were drug paraphernalia and thus supportive of probable cause.

Defendant's description of the tip as "a bare-bones unrecorded anonymous tip, where there was no explanation as to how the tipster knew about the alleged activity, and where the tip provided no predictive future behavior but merely provided readily observable information," Dkt. No. 46 at 11, is neither entirely accurate nor does it alter the Court's conclusion that probable cause existed here. First, the tip was not anonymous. The record reflects that Det. Cruz was familiar with the confidential informant, who had provided him with reliable information regarding criminal activity prior to the instant case. (Hr'g Tr. 13-14). Second, the absence of an informant's "basis of

knowledge" is not dispositive in the probable cause inquiry where—as here—the government has provided other sufficient indicia of reliability, such as corroboration of the tip. *See Stearn*, 597 F.3d at 556 (emphasizing police corroboration of tip above other indicators of reliability in totality of the circumstances analysis); *Gates*, 462 U.S. at 246 (finding an anonymous letter, with no indication of basis of knowledge, had sufficient indicia of reliability to support probable cause). In addition, as noted above, the confidential informant had provided reliable information in the past.

Third, the tip provided a prediction of future behavior that was subsequently corroborated by police officers: the blue Jeep Wrangler, driven by Defendant in a white T-shirt, arrived at Dynasty Convenience—the location where drugs allegedly were sold. This "seemingly innocent activity [observed by police investigation] … became suspicious in light of the initial tip." *Stearn*, 597 F.3d at 556 (quoting *Gates*, 462 U.S. at 243 n.13). This activity became even more suspicious, and the reliability of the tip was even more enhanced, when the officers observed the artisan vials in the vehicle. Thus, the Court finds the Defendant's argument unavailing and concludes that the confidential informant's tip, as corroborated by the police investigation, contains sufficient indicia of reliability to support a finding of probable cause to search the Jeep.

Defendant also argues that the Jeep was seized at the moment that Det. Cruz pulled his vehicle beside the Jeep in the area outside Dynasty Convenience and, because there was no probable cause to seize or search the Jeep at that time, nor did any develop later, the evidence seized must be suppressed. (Dkt. No. 46 at 3).[8] Defendant further argues that he was seized in the initial interaction with police officers. *Id.* The Court disagrees.

---

[8] Defendant also maintains that there was no reasonable suspicion to seize the vehicle. (Dkt. No. 46 at 3). Because the Court finds that the higher standard of probable cause has been met, the Court does not address the lower reasonable suspicion standard.

A seizure of property occurs when the government has initiated "some meaningful interference with an individual's possessory interests in that property." *Mitan v. United States Postal Inspection Serv.*, 656 F. App'x 610, 616 n.6 (3d Cir. 2016) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Property is seized when law enforcement agents "assert[] dominion or control over it." *Stone v. Martin*, 720 F. App'x 132, 134-35 (3d Cir. 2017) (citing *Jacobsen*, 466 U.S. at 120-21) (quotations omitted). Thus, a vehicle has been seized where law enforcement has secured it in anticipation of towing. *United States v. Lynch*, 290 F. Supp. 2d 490, 498 (M.D. Pa. 2003), *aff'd*, 214 F. App'x 248 (3d Cir. 2007). On the other hand, "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *Vargas v. City of Philadelphia*, 783 F.3d 962, 969 (3d Cir. 2015) (quoting *United States v. Mendenhall*, 446 U.S. 544, 553 (1980)). There is no seizure "when the individual does not yield or submit to the officer's show of authority." *Id.* (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991) and *United States v. Smith*, 575 F.3d 308, 313 (3d Cir. 2009); *see also Mendenhall*, 446 U.S. 544, 554 ("As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.").

Here, as discussed above, law enforcement officers received a tip that Defendant was conducting illegal drug activity at Dynasty Convenience. (Hr'g Tr. 6-7). When Defendant arrived at Dynasty Convenience, he pulled his blue Jeep Wrangler to the side of the road to park it on a small, grassy shoulder that was framed by a cinderblock wall on the driver's side, a driveway to the rear, and the road on the passenger's side. *See* Hr'g Tr. 8; Gov't Exs. 21; 22. No obstacle blocked the front of the Jeep and there was a driveway to its rear. *See* Hr'g Tr. 8; Gov't Ex. 21. The police vehicle pulled beside the Jeep, blocking it from the road on the passenger side, but not

in the front or back. (Hr'g Tr. 8). Based on the position of the two vehicles, Defendant, still in the Jeep at this time, would have been able to pull away to the front or back, had he been so inclined. *See id.* Instead, Defendant exited the Jeep, locked it with a remote control, briefly answered a question posed by Det. Cruz, and walked away from the officers to Dynasty Convenience. *Id.*

Under these circumstances, it is clear that Defendant was not excluded from his vehicle by law enforcement when Det. Cruz pulled his vehicle beside the Jeep outside Dynasty Convenience and Defendant exited his vehicle, locked it, and walked away. *See Burton*, 288 F.3d at 100 (rejecting conjectural argument that vehicle was seized because the defendant "d[id] not argue that he intended to use the [vehicle] had he not been" detained in the back of the police car). Further, the fact that Defendant walked away from the officers confirms that Defendant's own movement was not restricted by law enforcement, nor did he submit to any show of authority. *See Vargas*, 783 F.3d at 969; *Hodari D.*, 499 U.S. 621, 626 ("[A] seizure [does not] occur[] [where] the subject does not yield."). Accordingly, the Court finds that neither the Jeep nor Defendant were seized by law enforcement in the initial interaction before Defendant walked away.[9]

In sum, the Court concludes that, based on the informant's tip and the subsequent corroborating police investigation, there was probable cause to search the Jeep. Defendant's arguments to the contrary are without merit.

### b. Applicability of the Automobile Exception

The Government argues that, pursuant to the automobile exception, no warrant was necessary to conduct a search of the vehicle. (Dkt. No. 87 at 3). "The automobile exception permits

---

[9] It was only later in the course of the incident, after Defendant refused to consent to the search of his vehicle, that the officers informed Defendant that they were going to seize and tow the Jeep. *See* Hr'g Tr. 63.

vehicle searches without a warrant if there is probable cause to believe that the vehicle contains evidence of a crime." *Donahue*, 764 F.3d at 299-300 (citations and quotations omitted). Where there is probable cause to search the vehicle, a warrantless search of the entire vehicle and "its contents that may conceal the object of the search" is permitted. *Id.* at 300 (citations and quotations omitted).

As discussed above, the Court finds that there was probable cause to search the Jeep as a result of the confidential informant's tip and the subsequent police investigation. Thus, because the officers had probable cause to search the vehicle, the automobile exception applies, and no warrant was necessary to lawfully execute the search. *See Burton*, 288 F.3d at 100; *Donahue*, 764 F.3d at 295.

Accordingly, the Court concludes that the Government has met its burden to establish by a preponderance of the evidence that there was probable cause to search the blue Jeep Wrangler and, pursuant to the automobile exception, the search of the vehicle was lawful. The Court will therefore deny Defendant's Motion to Suppress the evidence seized from the search of the Jeep.[10]

### 2. Custodial Statements

Defendant argues that his Fifth and Sixth Amendment rights were violated when he was interrogated by federal law enforcement without his attorney present, even though the federal agents knew that, at the time, he was represented by counsel in the Superior Court matter from which this case arose. The Court disagrees.

---

[10] Because the Court concludes that the automobile exception to the Fourth Amendment warrant requirement applies here, the Court need not address Defendant's contention that the telephonic warrant obtained by Det. Cruz from Magistrate Judge Gallivan was invalid because the procedures mandated by Rule 4.1 of the Virgin Islands Rules of Criminal Procedure were not followed. *See* Dkt. No. 86 at 3-4. For the same reason, the Court need not address the Government's argument regarding the good faith exception to the warrant requirement. *See* Dkt. No. 87 at 6.

### a. Fifth Amendment *Miranda* Rights

There is no dispute that Defendant was given his *Miranda* warnings before his recorded interview with the federal agents. Defendant argues, however, that the Government has not established that Defendant's waiver of his *Miranda* rights was knowing and voluntary. In this regard, the Government entered a signed *Miranda* rights and waiver of rights form into evidence at the suppression hearing, together with oral testimony that Defendant voluntarily waived his *Miranda* rights. *See* Gov't Ex. 11; Hr'g Tr. 77-82.

If a defendant is properly advised of his *Miranda* rights and subsequently waives those rights, a court may find that the waiver was voluntary, knowing, and intelligent. *Green*, 516 F. App'x at 127 n.10 (citing *Montejo*, 556 U.S. at 786). Here, Special Agent Coffey, one of the interviewing agents, testified that he explained Defendant's *Miranda* rights to him by reading off of a statement of rights form. (Hr'g Tr. 77). The Government submitted that statement of rights form as Exhibit 11, and the form clearly states the *Miranda* rights, and specifically states that "[Defendant had] the right to have an attorney present with [him] during questioning." Gov't Ex. 11. Special Agent Coffey testified that he asked Defendant if he could read and write in English and he responded that he could. (Hr'g Tr. 79). He further testified that he read Defendant his *Miranda* rights. *Id.* He then "reviewed in summary" the waiver portion of the form for Defendant and asked him if he would be willing to waive his rights. *Id.* at 80. The waiver provision states:

> I have had the above statement of my rights read and explained to me and I fully understand these rights. I waive them freely and voluntarily, without threat or intimidation and without any promise of reward or immunity. I was taken into custody at 2:00 pm (time), on 4/16/19 (date), and have signed this document at 3:15 pm (time), on 4/16/19 (date).

Gov't Ex. 11 (the time and date fields are handwritten). Special Agent Coffey testified that Defendant agreed to waive his rights, signed the form, and participated in the interview. (Hr'g Tr. 80). Defendant's printed name and signature appear on the form. Gov't Ex. 11. Special Agent

Coffey further testified, and the video of the recorded interview reflects, that there was no intimidation, threats of any kind, physical harm, or coercion of any nature used against Defendant to obtain the *Miranda* waiver or during the course of the interview. Hr'g Tr. 82; Gov't Ex. 31 (15:20:50-24:22); *see also Pruden*, 398 F.3d at 246 ("[Waiver is voluntary if] it was the product of a free and deliberate choice rather than intimidation, coercion, or deception…."). Nor is there any evidence that Defendant requested counsel at any time during his custodial interrogation. *See Alston v. Redman,* 34 F.3d at 1245-47 (holding that a suspect must affirmatively invoke the right to counsel in a custodial interrogation).[11] Therefore, the Court finds that Defendant knowingly and voluntarily waived his Fifth Amendment rights prior to the interrogation.

In view of the foregoing, the Court will deny Defendant's Motion to Suppress on Fifth Amendment grounds.

### b. Sixth Amendment Right to Counsel

Defendant argues that the Government violated his Sixth Amendment right to counsel by conducting a custodial interview without Defendant's counsel present. Defendant contends that the HSI officers knew that Defendant was represented by counsel when they arrested him at the Superior Court and brought him to the HIDTA office to conduct the interview. The Government does not dispute that, at the time Defendant made the statements at issue, Defendant was represented by counsel in the Superior Court case, in which he had been charged. (Hr'g Tr. 109-10). However, the Government argues that, pursuant to the Supreme Court's ruling in *Montejo v.*

---

[11] *Montejo* stands for the proposition that a defendant has the right to invoke his right to counsel at any time after it attaches and the fact that a defendant has obtained counsel does not eliminate the need to do so. 556 U.S. at 786 (overruling *Michigan v. Jackson*, 475 U.S. 625 (1986), which established the rule that courts must presume that a knowing, voluntary waiver of *Miranda* rights is invalid when the defendant is already represented by counsel).

*Louisiana*, the HSI agents obtained a valid waiver from Defendant and lawfully conducted the interview. Based on the evidence presented at the suppression hearing, and the applicable law, the Court finds that Defendant's claim that the Government violated his Sixth Amendment right to counsel is without merit.

It is well established that a defendant may voluntarily and knowingly waive his *Miranda* rights, "whether or not [the defendant] is already represented by counsel." *Montejo*, 556 U.S. at 786. In *United States v. Johnson*, the court considered whether a defendant's right to counsel was violated when FBI agents interrogated him after the appointment of counsel in a state case. No. CR.A.09-752, 2010 WL 4910889 (E.D. Pa. Dec. 2, 2010). The defendant had invoked his right to counsel, and was represented in a proceeding in state court. *Id.* at *1. When the defendant was arrested and interviewed by federal agents, the state case—which was the subject of the subsequent federal indictment—was ongoing. *Id.* The federal agent who initially interviewed the defendant had actual knowledge that the defendant had an open criminal case at the state level when he executed the federal arrest warrant on the defendant. *Id.* The agent took the defendant to FBI headquarters and placed him in a conference room. *Id.* There, the arresting agent gave the defendant *Miranda* warnings, which the defendant verbally waived, but refused to memorialize in writing. *Id.* Although the defendant testified at the evidentiary hearing that he was never given any constitutional warnings, the court did not credit his testimony. *Id.* at *1, *5. The court found that the defendant "received his *Miranda* warnings and verbally waived his right to counsel" and further "did not invoke his right to counsel during the interrogation." *Id.* at *5. Relying on *Montejo*, the court in *Johnson* determined that the defendant's statements, obtained pursuant to his voluntary waiver of his right to counsel, did not violate the Sixth Amendment, notwithstanding that he had counsel in the state case. *Id.* at *4-*5.

The facts of this case are analogous to *Johnson*. The instant federal case arose from a case that was originally filed in the Superior Court. (Hr'g Tr. 89-90). There is no dispute that Defendant was represented by counsel in the Superior Court case at the time of his arrest and subsequent interview by federal agents. *Id.* at 109-10. Indeed, Special Agent Coffey testified that he assumed that Defendant was represented by counsel in the Superior Court case at the time of his arrest in this matter. *Id.* at 92. Special Agent Coffey arrested Defendant and took him to HIDTA headquarters and placed him in an interview room that he described as "[e]ssentially a conference room." *Id.* at 77. There, Special Agent Coffey read Defendant his *Miranda* rights from a form, entered into evidence as Government's Exhibit 11, and Defendant signed the form indicating a waiver of his rights. *Id.* at 78-81; Gov't Ex. 31 (15:20:50-24:22). As discussed above, Defendant's waiver of his *Miranda* rights—including his right to counsel—was knowing and voluntary. Thus, Defendant's interrogation by the federal agents did not violate his Sixth Amendment rights, notwithstanding that he was represented by counsel in the Superior Court matter.

In view of the foregoing, the Court will deny Defendant's Motion to Suppress on Sixth Amendment grounds.

### III.    CONCLUSION

For the reasons set forth above, the Court concludes that the Government has shown by a preponderance of the evidence that Defendant's Fourth Amendment rights were not violated because the search of the Jeep properly falls under the automobile exception to the warrant requirement. Further, the Court finds that Defendant knowingly and voluntarily waived his

*Miranda* rights, and thus, there was no violation of his Fifth or Sixth Amendment rights. Accordingly, the Court will deny Defendant's Motion to Suppress.

An appropriate Order accompanies this Memorandum Opinion.

Date:  March 31, 2020

_____/s/_____
WILMA A. LEWIS
Chief Judge